IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MEGAN HANSON, §<br>　　　　Plaintiff, §<br>　　　　　　　　§<br>v. 　　　　　　　§<br>　　　　　　　　§<br>AMERICAN AIRLINES, INC, §<br>　　　　Defendant. § | | CIVIL ACTION NO. 4:25-CV-1046 |

---

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Megan Hanson, hereinafter called Plaintiff, complaining of and about American Airlines, Inc., hereinafter called Defendant, and for cause of action shows unto the Court the following:

**PARTIES AND SERVICE**

1.　Plaintiff is a resident of Tarrant County, Texas. Defendant American AirlineS, Inc. is a domestic corporation with a location in Tarrant County, Texas. Defendant may be served by serving its registered agent, Corporation Service Company D/B/A CSC-Lawyers Inc. at 211 E. 7TH Street, Suite 620, Austin, Texas 78701. ***Issuance of a summons is hereby requested.***

**JURISDICTION & VENUE**

2.　Jurisdiction is proper in this Court because this case has federal question jurisdiction over civil rights matters under 28 U.S.C. §§ 1441, 1443, and 1446.   This Court has supplemental jurisdiction over state law claims discussed below under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

3.　This Court has supplemental jurisdiction over state law claims discussed below

under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

## NATURE OF ACTION

4. This is an employment action brought under Title VII of the Civil Rights Act (Title VII), Americans with Disability Act (ADA), and Chapter 21 of the Texas Labor Code, all of which prohibit employment discrimination for persons with disabilities.

## CONDITIONS PRECEDENT

5. All conditions precedent to jurisdiction have occurred or been complied with as a charge of discrimination was filed with the Equal Employment Opportunity Commission within three hundred days of the acts complained of herein, and Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter.

## FACTS

6. Plaintiff Megan Y. Hanson ("Hanson") is a female, a member of racial and ethnic minority groups, and an individual with disabilities as defined by the Americans with Disabilities Act ("ADA") and Chapter 21 of the Texas Labor Code.

7. Hanson began her employment with Defendant American Airlines, Inc. ("American") in 2014 as a flight attendant.

8. Hanson successfully performed her duties for nearly a decade. She was qualified for her position and consistently met the requirements of the flight attendant role.

9. In 2022, Hanson's employment ended due to attendance issues.

10. In March 2023, American reinstated Hanson pursuant to a Last Chance Agreement, recognizing both her prior service and her qualifications for the position.

11. In January 2023, Hanson was arrested and later indicted for possession of less than

one gram of a controlled substance.

12. Hanson was never convicted of this charge. Instead, she entered a pre-trial diversion program, which is not a conviction under TSA regulations or federal law.

13. American was aware of Hanson's pending case when she was reinstated. She passed a background check and was permitted to return to work.

14. For over 14 months, Hanson continued to perform her duties as a flight attendant, and American never received notice from TSA that her clearance had been revoked.

15. Hanson suffers from a medical condition that substantially limits major life activities. American was aware of her condition through her use of Family and Medical Leave Act (FMLA) leave and related medical documentation.

16. Despite this knowledge, American failed to engage in the interactive process or provide reasonable accommodations for Hanson's disability, as required under the ADA and Texas Labor Code Chapter 21.

17. Instead, American mischaracterized Hanson's pre-trial diversion status as a felony conviction and asserted she was disqualified from her position.

18. On August 1, 2024, American questioned Hanson about her pending case in the presence of her union representative.

19. On August 8, 2024, American placed Hanson on an involuntary 90-day leave of absence, citing unresolved clearance issues.

20. Hanson never lost her TSA clearance and never received notice from TSA that she was barred from secured areas of airports.

21. On November 7, 2024, American terminated Hanson's employment, falsely claiming she was ineligible for security clearance.

22. American's stated reason for Hanson's termination was pretextual. She had been allowed to work for more than a year after her arrest and indictment, and American selectively enforced policies to justify her removal.

23. American treated similarly situated employees outside Hanson's protected classes more favorably. Employees with more severe attendance records or disciplinary histories were retained, while Hanson was terminated.

24. Hanson was also targeted because she exercised her rights under the FMLA and ADA. American's actions constitute unlawful retaliation.

25. As a result of Defendant's conduct, Hanson suffered loss of employment, lost wages and benefits, damage to her career, emotional distress, and other harms for which she now seeks relief..

## RACE, SEX, AND NATIONAL ORIGIN (TITLE VII)

26. Title VII of the Civil Rights Act of 1964 (the "Act") makes it unlawful to discriminate against someone on the basis of race, color, national origin, sex (including pregnancy, sexual orientation, and gender identity) or religion. The Act prohibits not only intentional discrimination, but also practices that have the effect of discriminating against individuals because of their race, color, national origin, religion, or sex.

27. To establish a prima facie case of discrimination, a plaintiff must show that: (1) the plaintiff belongs to a protected class; (2) the plaintiff was qualified for his position; (3) the plaintiff, despite being qualified, was rejected; plaintiff experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "[T]he phrase 'terms,

conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris*, 510 U.S. at 21 (quoting *Meritor*, 477 U.S. at 64). *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019).

28. The phrase "terms, conditions, or privileges of employment" evinces a congressional intent "to strike at the entire spectrum of disparate treatment of men and women" in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)); *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019).

29. Plaintiff Hanson is a member of multiple protected classes under Title VII. She is female, a member of racial and ethnic minority groups, and thus falls within the Act's protections against discrimination on the basis of sex, race, and national origin.

30. Plaintiff was qualified for her position as a flight attendant. She had nearly a decade of experience with American Airlines and, in March 2023, was reinstated under a Last Chance Agreement following prior attendance issues. Her reinstatement itself confirms that she was deemed qualified for her role.

31. Despite her qualifications, Plaintiff was subjected to an adverse employment action when American terminated her employment on November 7, 2024.

32. American's stated reason for termination — that Plaintiff was disqualified due to a supposed "felony conviction" preventing TSA clearance — was false and pretextual. Plaintiff had never been convicted; she was in a pre-trial diversion program that did not constitute a conviction

under TSA regulations and this had been happening for over a year with Americans knowledge—nothing had changed.

33. Similarly situated employees outside of Plaintiff's protected classes were treated more favorably. Employees with more severe disciplinary and attendance issues, or with other legal complications, were not terminated, whereas Plaintiff was selectively targeted.

34. The circumstances surrounding Plaintiff's termination further support an inference of discrimination. American knowingly allowed her to work for more than 14 months after her arrest and indictment, but then abruptly used her diversion status as a pretext to end her employment.

35. Plaintiff was also denied the equal "terms, conditions, or privileges of employment" guaranteed by Title VII. She was subjected to discriminatory treatment in the enforcement of policies, heightened scrutiny of her case status, and ultimately wrongful termination.

36. Defendant's conduct constitutes unlawful discrimination against Plaintiff on the basis of her sex, race, and national origin, in violation of Title VII.

37. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered lost wages and benefits, emotional distress, mental anguish, humiliation, and other compensable injuries.

## ADA - DISABILITY DISCRIMINATION AND FAILURE-TO-ACCOMMODATE CLAIMS

38. Plaintiff incorporates all preceding paragraphs herein.

39. The Americans with Disabilities Act of 1990 (ADA) along with the Americans With Disabilities Act Amendments Act of 2008 (ADAAA) prohibit an employer from 'discriminat[ing] against a qualified individual on the basis of disability,' by, among other things, terminating an

individual's employment." *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 479 (5th Cir. 2016) (alteration in original) (quoting 42 U.S.C. § 12112(a)). "To establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (alteration in original) (quoting *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)).

40. The ADA also "requires an employer to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *Delaval*, 824 F.3d at 481 (quoting 42 U.S.C. § 12112(b)(5)(A)). To prevail on a failure-to-accommodate claim, the plaintiff must show "(1) [he] is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Feist*, 730 F.3d at 452.

41. A plaintiff can establish that he is "qualified" by showing that "either (1) [he] could perform the essential functions of the job in spite of [his] disability," or "(2) that a reasonable accommodation of [his] disability would have enabled [him] to perform the essential functions of the job." *LHC Grp.*, 773 F.3d at 697 (quoting *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir. 1996)). "Time off, whether paid or unpaid, can be a reasonable accommodation, but an employer is not required to provide a disabled employee with indefinite leave." *Delaval*, 824 F.3d at 481. Furthermore, reassignment to a different job may be a reasonable accommodation, but "[t]he plaintiff bears the burden of proving that an available position exists that he was qualified for and could, with reasonable accommodations, perform." *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007) (citation omitted); *see also Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997) ("For the accommodation of a reassignment to be reasonable, it is clear that a position must

first exist and be vacant.").

42. The case law is clear. A plaintiff must establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate some legitimate nondiscriminatory reason for its employment decision. If the defendant articulates a legitimate nondiscriminatory reason, then, the plaintiff, in order to prevail, must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

43. Plaintiff Hanson is an individual with a disability as defined by the ADA and the ADA Amendments Act. She suffers from a medical condition that substantially limits one or more major life activities.

44. Defendant American Airlines was aware of Hanson's disability. This knowledge came through her use of Family and Medical Leave Act (FMLA) leave, supporting medical documentation, and communications regarding her health.

45. Hanson was a qualified individual with a disability. She had nearly a decade of experience as a flight attendant, and she was capable of performing the essential functions of her position with or without reasonable accommodation.

46. Despite Hanson's qualifications, American failed to engage in the interactive process or provide reasonable accommodations for her disability. Instead, it selectively applied policies and mischaracterized her legal status to justify removing her from her position.

47. On August 8, 2024, American placed Hanson on involuntary leave, and on November 7, 2024, American terminated her employment. Both actions constitute adverse employment decisions under the ADA.

48. American's stated reason for termination — that Hanson was disqualified due to a

supposed felony conviction preventing TSA clearance — was false. Hanson was never convicted and remained eligible under TSA standards and had been working for over a year under the same exact terms.

49. The circumstances surrounding Hanson's leave and termination show that her disability, and her exercise of rights associated with that disability, were motivating factors in American's decision.

50. American's actions further demonstrate a failure-to-accommodate claim. Hanson was a qualified individual, her disability and limitations were known, and American failed to provide reasonable accommodations or consider alternatives that would have allowed her to continue performing her essential job functions.

51. Defendant's conduct constitutes unlawful discrimination against Hanson on the basis of disability, in violation of the ADA, the ADA Amendments Act, and parallel provisions of Chapter 21 of the Texas Labor Code.

## RETALIATION (TITLE VII & ADA)

52. Plaintiff incorporates all preceding paragraphs.

53. Title VII of the Civil Rights Act of 1964 (the "Act") prohibits retaliation against an employee who reports discrimination based on disability. It is unlawful to retaliate against applicants or employees for communicating with a supervisor or manager about employment discrimination, including harassment. Retaliation can take the form of a reprimand; giving a performance evaluation that is lower than it should be; engaging in physical or verbal abuse; increased scrutiny; and making the employee's work more difficult. A plaintiff establishes a claim for retaliation when [s]he, "engaged in an activity protected by Title VII; 2) was subjected to an adverse employment action; and 3) a causal link exists between the protected activity and the

adverse employment action." *Adams v. Vaughn*, No. 3:18-CV-1109-B-BT, 2019 WL 1003845, at *3 (N.D. Tex. Feb. 12, 2019)(quoting *Wright v. Chevron Philips Chem. Co.*, 734 F. App'x 931, 935 (5th Cir. 2018)(per curiam)). Protected activity includes complaining to supervisors about acts of unlawful discrimination. 42 U.S.C. §2000e-3(a); *Valdarez v. Lubbock Cty. Hosp. Dist.*, 611 Fed. Appx. 816, 820-21 (5th Cir. 2015)(finding that the plaintiff's report of sexual harassment to his supervisor was protected activity).

54. Title VII states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

55. *McDonnell Douglas* provides the burden-shifting framework for claims of unlawful retaliation under Title VII. *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1112 (5th Cir. 1998). It says that "to show an unlawful retaliation, a plaintiff must establish a prima facie case of (1) engagement in an activity protected by Title VII, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action." *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 348–49 (5th Cir. 2019) (quoting *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999)); *see also Credeur*, 860 F.3d at 797 (same). If "the plaintiff has established a prima facie case, the defendant must come forward with a legitimate, non-discriminatory reason for the adverse employment action." *Nall*, 917 F.3d 335, 349 (5th Cir. 2019) (quoting Seaman, 179 F.3d at 301). If the defendant does so, "the plaintiff must adduce sufficient evidence that the proffered reason is a pretext for retaliation. Ultimately, the employee must show that 'but for' the protected activity, the adverse employment action would not have occurred." *Id*.

56. Plaintiff Hanson engaged in protected activity when she exercised her rights under the ADA and FMLA, including requesting leave related to her medical condition and providing documentation of her disability.

57. Plaintiff further engaged in protected activity when she opposed discriminatory treatment and participated in the EEOC charge process, which constitutes activity protected by Title VII and the ADA.

58. After engaging in this protected activity, Plaintiff was subjected to adverse employment actions, including increased scrutiny, involuntary leave, and ultimately termination on November 7, 2024.

59. A causal link exists between Plaintiff's protected activity and her termination. Defendant allowed Plaintiff to work for more than a year after her arrest and indictment but moved to end her employment only after she exercised her rights and sought protections under federal law.

60. Defendant's stated reason for termination — that Plaintiff was disqualified due to a supposed felony conviction preventing TSA clearance — was false and pretextual. Plaintiff was never convicted and remained eligible under TSA standards.

61. Defendant selectively enforced policies against Plaintiff, while other similarly situated employees outside of her protected classes or who had not engaged in protected activity were treated more favorably.

62. The close temporal proximity between Plaintiff's protected activity and her termination, combined with the shifting and inconsistent justifications offered by Defendant, establish that but for Plaintiff's protected activity, she would not have been terminated.

63. Defendant's conduct constitutes unlawful retaliation in violation of Title VII and the ADA.

64. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered loss of wages and benefits, emotional distress, mental anguish, humiliation, and other compensable injuries.

**CHAPTER 21 TEXAS LABOR CODE – HOSTILE WORK ENVIRONMENT**

65. Plaintiff incorporates all preceding paragraphs herein as if set forth at length.

66. Plaintiff asserts a violation of Tex. Lab. Code 21.051 under the Texas Commission on Human Rights Act (TCHRA). The code states:

> "An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:
>
> (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or
>
> (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee."

67. A hostile-work-environment claim is designed to address conduct that is so severe or pervasive that it destroys an employee's opportunity to succeed in the workplace. *Gardner*, 414 S.W.3d at 382 (citing *City of Houston v. Fletcher*, 166 S.W.3d 479, 489 (Tex. App. Eastland 2005, pet. denied)).

68. To succeed on a TCHRA claim of hostile work environment, the complained-of conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Waffle House, Inc.*, 313 S.W.3d at 806 (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)).

69. Plaintiff Hanson is a member of protected classes under Chapter 21 of the Texas Labor Code, including sex, race, national origin, and disability.

70. Throughout her employment, Defendant subjected Plaintiff to disparate treatment and heightened scrutiny because of her protected characteristics and disability status.

71. After exercising her rights under the ADA and FMLA, Plaintiff was placed on involuntary leave, interrogated about her pending legal matter despite American's prior knowledge of her status, and denied the same leniency given to similarly situated employees outside her protected classes.

72. Defendant's actions created an environment where Plaintiff was treated as if she were guilty of wrongdoing, unfit for her job, and undeserving of equal opportunities provided to her peers.

73. This environment was hostile, intimidating, and abusive, as Plaintiff was constantly pressured, monitored, and threatened with job loss based on a false "conviction" characterization and her disability-related needs.

74. The conduct was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment, culminating in her forced leave of absence and eventual termination.

75. As a result, Plaintiff was deprived of equal terms, conditions, and privileges of employment, and her opportunity to succeed in the workplace was destroyed.

76. Defendant's conduct constitutes a hostile work environment in violation of Tex. Lab. Code § 21.051.

## RESPONDEAT SUPERIOR AND RATIFICATION

77. Whenever in this complaint it is alleged that the Defendants did any act or thing, it is meant that the Defendants' officers, agents, servants, employees or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of

the Defendants or was done in the normal and routine course and scope of employment of Defendants' officers, agents, servants, employees, or representatives.

## DAMAGES

78. Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendant described hereinabove:

    a. All reasonable and necessary Attorney's fees incurred by or on behalf of Plaintiff;

    b. Back pay from the date that Plaintiff was denied equal pay for equal work and interest on the back pay in an amount to compensate Plaintiff as the Court deems equitable and just;

    c. All reasonable and necessary costs incurred in pursuit of this suit;

    d. Front pay in an amount the Court deems equitable and just to make Plaintiff whole;

    e. Inconvenience;

    f. Interest;

    g. Mental anguish in the past;

    h. Mental anguish in the future; and

    i. Loss of benefits.

## SPECIFIC RELIEF

79. Plaintiff seeks the following specific relief which arises out of the actions and/or omissions of Defendant described hereinabove:

    a. Neutral job reference; and

    b. An injunction against Defendants prohibiting discriminatory employment practices on the basis of disability and other protected categories.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Megan Hanson, respectfully

prays that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants for damages in an amount within the jurisdictional limits of the Court; together with interest as allowed by law; costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY**

Respectfully submitted,

/s/ Ali Crocker Russell
Ali Crocker Russell
State Bar No. 24098868
ali@cralawfirm.com

CROCKER RUSSELL & ASSOCIATES
200 W. Oak Street
Mansfield, Texas 76063
Tel: (817) 482-6570
Fax: (682) 232-1850

**ATTORNEY FOR PLAINTIFF**